UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cr-168-MOC-DSC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **ARTHUR BAILEY,** | ) | |
| | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court on Defendant's Motion to Suppress. (Doc. No. 20). Having considered Defendant's motion, reviewed the pleadings, and conducted an evidentiary hearing, the Court enters the following findings, conclusions, and Order denying Defendant's motion.

## FINDINGS AND CONCLUSIONS

I.      **Background**

On December 12, 2019, J.M. called the police department for Matthews, North Carolina, and told them a female friend was being held against her will inside a home on Ashley Road in Charlotte, North Carolina. J.M. explained that his friend was texting that her boyfriend would not allow her to leave the home. J.M. did not know the exact address but was able to screenshot his friend's location and send it to officers. J.M. told officers a gray BMW was in the home's driveway. Police officers with the Charlotte Mecklenburg Police Department ("CMPD") were dispatched to Ashley Road to try to locate the subject residence and conduct a welfare check.

With the information provided by J.M., CMPD officers drove to the general vicinity of the subject location and identified a specific residence based on a gray BMW in the driveway.

1

The residence was located at 2633 Ashley Road in Charlotte, North Carolina. Officer Mack was one of the CMPD officers who responded to the location. As Officer Mack approached the subject residence, he saw a gray BMW and a black Hyundai Sonata in the driveway. Officer Mack looked inside both vehicles. He saw soft body armor on the backseat vehicle floor of the BMW, and he also noticed several marijuana "roaches" in the center console ashtray inside the Sonata.

Officer Mack walked to the front of the residence and knocked on the door. Defendant eventually responded to the knocking by speaking with officers through the closed door. Officer Mack told Defendant the officers were there to conduct a welfare check. Defendant explained that he would open the door but that he needed to get dressed first. A few moments later, officers heard what sounded like a female scream coming from inside the home. Officer Mack began pounding on the door and ordered Defendant to open the door. Defendant opened the door.

When Defendant opened the door, he seemed very agitated and told officers that no one called the police and wanted to know why they were at the home. Officer Mack could smell the odor of marijuana coming from inside the residence. As Defendant was speaking to CMPD officers, a female, L.G., emerged from a rear bedroom of the residence. Officers asked L.G. to step outside and speak with them. L.G. stepped out of the residence and spoke with CMPD Officer Hamilton across the street from the subject residence. Officer Mack maintained contact with Defendant. Defendant was standing in the open doorway of his residence, speaking primarily with Officer Mack. During this time, Defendant generally explained to Officer Mack how he met L.G. and denied causing her any physical harm. Across the street from the subject residence, L.G. told Officer Hamilton that she had only been staying with Defendant at the

subject residence a few days. L.G. explained that earlier that evening Defendant had become

aggressive and grabbed her throat. Defendant also made a physical motion toward L.G.

indicating he was going to hit her. After speaking with L.G., CMPD Officer Hamilton radioed

Officer Mack and instructed him to detain Defendant.

Officer Mack placed Defendant in handcuffs in the residence's doorway. Defendant was

wearing sweatpants and no shirt, and as he was being placed in handcuffs he asked if he could

get a jacket. Officer Mack stepped inside the residence with Defendant to obtain a jacket.

Officer Mack saw what he suspected was marijuana and ammunition, in plain view, inside the

living room area. Specifically, Officer Mack described seeing a green leafy vegetable matter—

suspected marijuana—on a white piece of paper on the couch to the right of the doorway in plain

view. (Doc. No. 21-1). He also observed a gold and black box of ammunition on the ottoman in

front of the couch to the right of the doorway. (Id.). He also stated that he could also see a clear

plastic bag filled with green leafy vegetable matter—suspected marijuana—on the counter of the

kitchen-living room pass through window. (Id.). After a brief interaction inside the residence,

Defendant asked Officer Mack to leave. In response, Officer Mack stepped outside of the

residence with Defendant in handcuffs. The front door area of the residence remained open.

CMPD officers obtained a search warrant for the home. Officer Mack was the search

warrant affiant. During the subsequent search, CMPD officers seized ammunition, a firearm,

marijuana, and methamphetamine. During a search of one of the cars in the driveway, officers

located another firearm hidden under the hood of a vehicle parked in the driveway. Defendant

was subsequently charged with possession of a firearm and ammunition by a felon, in violation

of 18 U.S.C. § 922(g), possession with intent to distribute methamphetamine, in violation of 21

3

U.S.C. § 841(a)(1) and § 841(b)(1)(C), and possession of a firearm in furtherance of drug-trafficking, in violation of 18 U.S.C. § 924(c).

Defendant filed the pending motion to suppress on October 9, 2020, contending that the act of Officer Mack and Officer Hamilton's entering Defendant's residence before the issuance of a warrant was a search within the meaning of the Fourth Amendment that was not supported by consent or probable cause. Defendant, therefore, moves to suppress all of the evidence obtained pursuant to the search warrant.

## II.    Discussion

The Fourth Circuit has "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004). In United States v. Jones, the Fourth Circuit held that "based on the officers' detection of a strong odor of marijuana smoke coming from [the defendant's] house, the magistrate lawfully issued a warrant authorizing the search of [the defendant's] entire house, including safes and locked boxes, for evidence of the crime of marijuana possession." 952 F.3d 153, 158 (4th Cir. 2020). The possession of any amount of marijuana is a criminal offense in North Carolina. Here, when Officer Mack smelled marijuana coming from inside the residence he had probable cause to believe there was additional marijuana inside the home, justifying a warrant to search the premises.

The Court further finds that Officer Mack's act of briefly stepping into the subject residence to obtain a shirt for Defendant, before the obtaining the search warrant, was not itself a search. When the CMPD officers informed Defendant he was going to be detained and began to place him in handcuffs, Defendant asked to get a jacket. At that point, Officer Mack entered the residence with Defendant to retrieve clothing items. When Defendant then said he did not want

4

Officer Mack inside of the residence, Officer Mack then stepped outside as requested by Defendant. Officer Mack never left the living room area, did not touch any item, and left when instructed to do so by Defendant.

The plain view doctrine requires the Government to demonstrate that: "(1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a 'lawful right of access' to the seized items; and (3) the incriminating character of the items was immediately apparent." United States v. Davis, 690 F.3d 226, 233 (2012). The Government has shown that the marijuana items that Officer Mack saw inside the subject residence during this time were in plain view. Arguably, Officer Mack could have seized the marijuana items the moment he saw them. Instead, CMPD officers took the time to obtain a search warrant for the entire residence and only seized narcotics when the search warrant was in hand.

The Court will deny the motion to suppress.

III. **Conclusion**

Having carefully considered Defendant's Motion to Suppress, the memoranda submitted, and heard the evidence presented, the Court enters the following Order denying the Motion to Suppress.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion to Suppress, (Doc. No. 20), is **DENIED**.

Signed: December 11, 2020

Max O. Cogburn Jr.
United States District Judge

6